**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

CHARLES NAPIER-EL/BEY, #167446,

        Petitioner,

v.                        CIVIL ACTION NO. 2:05cv521

GENE M. JOHNSON, Director of the
Virginia Department of Corrections,

        Respondent.

### UNITED STATES MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter was initiated by petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter was referred to the undersigned United States Magistrate Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Local Civil Rules of the United States District Court for the Eastern District of Virginia.

### I. STATEMENT OF THE CASE

#### A. Background

On September 13, 1988, Petitioner, Charles Napier-El/Bey ("Napier-El/Bey")[1], was found guilty by jury of one count of first-degree murder, one count of robbery, two counts of abduction, and four counts of use of a firearm, in the Circuit Court for the City

---

[1] Throughout trial and for the initial appeal, the prisoner referred to himself in all court filings as Charles Napier, which is how he was referred to in the trial court's sentencing order, infra.

of Petersburg, Virginia.  After the jury's verdict was announced, Napier-El/Bey elected to plead guilty to first-degree murder so that he could be sentenced by a judge.  He was sentenced to serve two (2) life sentences, plus 29 years in prison, as reflected in the Court's Sentencing Order entered on June 12, 1989.[2]

On June 29, 1989, Napier-El/Bey made a motion for modification of his sentence to allow the life and the 29-year sentences to run concurrently.  On June 30, 1989, this motion was denied.

On July 12, 1989, Napier-El/Bey filed a notice of appeal with the Court of Appeals of Virginia.  The appeal, which alleged insufficient evidence for the charges of robbery, abduction, and

---

[2]Napier-El/Bey also pled guilty in the Circuit Court of the County of Prince George on November 13, 1988, to "shooting or throwing a missle [sic] at an occupied vehicle" ("the Prince George Conviction").  On November 2, 1988, he was sentenced to confinement for ten (10) years, of which ten (10) years was suspended.  This sentence was never revoked and has since expired.  Napier-El/Bey did not appeal or file a timely habeas corpus petition for the Prince George conviction.  When Napier-El/Bey filed a state habeas petition for the instant conviction, he also filed an almost identical state habeas petition (the differences were venue, charge, and sentence) for his Prince George conviction.  Napier-El/Bey has also filed a federal habeas petition for the Prince George conviction asserting the same grounds as for the instant petition and he has continued filing almost identical documents in both cases.  The Prince George petition was processed in this Court under Civil Action No. 2:05cv515.  Insofar as Napier-El/Bey is not currently serving a sentence for that conviction, that petition was recommended for dismissal upon a granting of a motion for summary judgment by the undersigned Magistrate Judge as reflected in the United States Magistrate Judge's Report and Recommendation dated on June 1, 2006.
The Court also notes that in the habeas petition and related proceedings for the Prince George Conviction, Napier-El/Bey was referred to as Napier, Napier-El, Napier-El-Bey and Napier-El/Bey.

use of a firearm, was denied on January 9, 1991,[3] because no transcript or statement of facts had been filed with the court. This decision was not appealed to the Supreme Court of Virginia.

On January 21, 1992,[4] Napier-El/Bey filed a pro se petition for a writ of habeas corpus in the Supreme Court of Virginia, alleging ineffective assistance of counsel in the filing of his appeal to the Virginia Court of Appeals.[5]  On March 2, 1992, the court granted the writ limited to the issue of the denial of the right to appeal.  The court granted Napier-El/Bey leave to file a notice of appeal and to apply to the Court of Appeals of Virginia for an appeal from the June 12, 1989 judgments.  Further, the court stated that "all computations of time as required by the rules of this Court and applicable statutes shall commence on the date of entry of th[e] order [granting the writ, March 2, 1992] or [the date counsel for the appeal is appointed,] whichever date shall be later."

---

[3]The delay between the filing of the notice of appeal and the denial of that appeal appears partially attributable to Napier-El/Bey's Motion for Extension of Time to file Transcript filed with the Circuit Court for the City of Petersburg, on July 12, 1989.  On July 13, 1989, the court granted Napier-El/Bey's motion and provided him a sixty-day extension for filing the transcript.

[4]At the time this petition was filed, the statute for filing state habeas petitions did not include the statute of limitations, Va. Code Ann. § 8.01-654(A)(2), infra; this provision was added through a 1998 amendment.

[5]In this petition, the prisoner referred to himself as Charles Napier El.

Napier-El/Bey re-filed his appeal with the Court of Appeals, which was denied on the merits on February 23, 1993.[6] Napier-El/Bey petitioned the Supreme Court of Virginia for an appeal, but was denied by order dated August 16, 1993.[7] Napier-El/Bey did not file an appeal with the United States Supreme Court.

On March 28, 2005,[8] Napier-El/Bey filed a second petition for a writ of habeas corpus in the Supreme Court of Virginia. On April 25, 2005, the court dismissed the petition as time-barred under Virginia's habeas corpus statute of limitations, Virginia Code §

---

[6]This appeal alleged the following: the state capital murder statute was unconstitutional; Napier-El/Bey received ineffective assistance of counsel; one of the abduction convictions was barred by the double-jeopardy clause; and the evidence was insufficient to support some of his convictions, including the second abduction conviction. The court did not consider the ineffectiveness of counsel allegation because the referenced statute had been repealed effective July 1, 1990.

[7]Napier-El/Bey's records did not include documentation for the denial of appeal by the Supreme Court of Virginia. This information was obtained from Respondent's Memorandum of Law in Support of Motion to Dismiss, October 17, 2005 ¶5. Respondent noted that these records could not be located. Id. at 2 n.1.

[8]While Napier-El/Bey's state petition for habeas corpus was received by the Supreme Court of Virginia on March 31, 2005, the petition appears to have been executed on March 28, 2005. The Court notes that a Virginia Supreme Court Special Rule, effective September 1, 2004, recognizes a prison mailbox rule for inmate filings in the Virginia trial courts: a paper is timely filed by an inmate when "deposited in the institution's internal mail system with first-class postage prepaid on or before the last day of filing." Va. Sup. Ct. R. 3A:25. The Court has applied this rule in considering Napier-El/Bey's state habeas petition as filed on March 28, 2005.

8.01-654(A)(2).[9]

On August 22, 2005, while in the custody of the Virginia Department of Corrections at the Nottoway Correctional Center, Napier-El/Bey executed the instant federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[10]   The Court

_____

[9]"A habeas corpus petition attacking a criminal conviction or sentence . . . shall be filed within two years from the date of final judgment in the trial court or within one year from either final disposition of the direct appeal in state court or the time for filing such appeal has expired, whichever is later." Va. Code Ann. § 8.01-654(A)(2). In this case, the date of final judgment in the trial court was June 12, 1989, and the final disposition of Napier-El/Bey's direct appeal in the state court was August 16, 1993, when the Supreme Court of Virginia refused the appeal. Thus, Napier-El/Bey's state habeas petition must have been filed on or before August 16, 1994, to be considered timely. Napier-El/Bey did not file his state habeas petition until well after this deadline, on March 28, 2005.
     The Court also notes that in the 2005 state habeas corpus petition, the prisoner referred to himself as Charles Napier-El-Bey.

[10]Napier-El/Bey appears to have originally executed a federal petition for habeas corpus on August 22, 2005. The petition was postmarked August 26, 2005, was received by the United States District Court for the Eastern District of Virginia, Richmond, on August 30, 2005, and was conditionally filed with this Court on September 6, 2005 because it was not accompanied by the $5.00 filing fee or a request to proceed in forma pauperis. On September 12, 2005, the Court received the $5.00 filing fee.
     The Court notes that the United States Supreme Court promulgated certain amendments to the Rules Governing Section 2254 Cases in the United States District Courts, which became effective on December 1, 2004. As amended, Rule 3(d) adopts the prison mailbox rule with regard to § 2254 petitions. Accordingly, the Court recognizes the prison mailbox rule for federal habeas petitions. In this case, as there is no evidence in the record to the contrary, the Court will assume that Napier-El/Bey delivered his federal habeas petition for mailing on the date he signed it, August 22, 2005.
     Further, the Court considers Napier-El/Bey's petition as filed, for statute of limitations purposes, on that date. A

conditionally filed this petition on September 6, 2005.  On September 12, 2005, Napier-El/Bey submitted the $5.00 filing fee, and on September 20, 2005, the Court filed his petition.[11]  On October 18, 2005, Respondent filed his Rule 5 Answer and Motion to

---

federal habeas corpus petition is considered timely filed if it is deposited in the prison mailing system prior to the running of the statute of limitations, even if it does not comply with Rule 2 of the Rules Governing Section 2254 Cases or it lacks the requisite filing fee or in forma pauperis form.  See Rule 3 2004 Advisory Committee's Notes (recognizing that Rule 3 is silent as to the filing date of a petition not submitted on the proper form or not accompanied by the filing fee or a motion to proceed in forma pauperis, and advising that the court clerk, in such instances, must "accept the defective petition and require the petitioner to submit a corrected petition.")  See also Thompson v. Greene, 427 F.3d 263, 269 (4th Cir. 2005) (applying United States v. Vonn, 535 U.S. 55, 64 n.6 (2002) ("In the absence of a clear legislative mandate, the Advisory Committee Notes provide a reliable source of insight into the meaning of a rule.")); Nichols v. Bowersox, 172 F.3d 1068, 1076 (8th Cir. 1999) (holding that Rule 3 of the Rules Governing Section 2254 Cases "is not dispositive" for purposes of establishing the time of filing of a habeas petition); Harris v. Vaughn, 129 Fed. Appx. 684, 690 (3rd Cir. 2005) (holding that "the date of filing for statute of limitations purposes is the date that the [federal] habeas petition is received by the court or by the appropriate prison official (if the mailbox rule applies), regardless of whether payment or an [in forma pauperis] application is attached, as long as either follows within a reasonable time and there is no evidence of bad faith.")

     The Court also notes that in all of his correspondence with this Court, the prisoner has referred to himself as Charles Napier-El/Bey.

     [11]The Court notes that Napier-El/Bey's petition also requested an "evidentiary hearing and the review and reconsideration as deemed by the I[nternational] C[ouncil of] J[ustice]." Additionally, the petition was accompanied by a motion for appointment of counsel.  In the Court's September 20, 2005, order, this motion was denied "pending determination by the Court whether a hearing on petitioner's application will be required."  The Court stated it would reconsider the motion "[i]f an evidentiary hearing becomes necessary for a resolution of the matters raised in petitioner's application."

Dismiss accompanied by a supporting memorandum and a Notice of Motion Pursuant to Local Rule 7(J).[12]  On November 16, 2005, Napier-El/Bey filed his response to Respondent's Motion to Dismiss.[13]

---

[12]The Court notes that Respondent's Notice of Motion erroneously referred to the Local Rule 7(J), instead of Local Civil Rule 7(K), but the Notice complied with the requirements of Roseboro v. Garrison, 582 F.2d 309 (4th Cir. 1975). This included advising Napier-El/Bey that he had twenty (20) days to file a response to the Motion to Dismiss.

   This Notice was mailed to Napier-El/Bey on October 17, 2005. On October 25, 2005, Napier-El/Bey filed a Motin [sic] to Enlarge Time in Which to File Responsive Pleading, requesting his time to file his response be extended to November 18, 2005.  The Court granted this motion on October 31, 2005.

   On February 1, 2006, Napier-El/Bey also filed Petitioner's First Request for Admissions.  On February 14, 2006, Respondent submitted a Reply to Petitioner's First Request for Admissions, in which Respondent asserted that Napier-El/Bey "is attempting to invoke discovery to which he is not entitled," and "pray[ed] that the Court den[y] petitioner's request for admission." Rule 6(a) of the Rules Governing Section 2254 Cases provides that the Court must give leave before a party may conduct discovery, and Rule 6(b) states that this leave must be formally requested and include reasons supporting the request.  The Court notes such leave was not granted in this case, and the Court DENIES any such request by Napier-El/Bey to propound discovery.

[13]This response was accompanied by an undated Declaration of Nationality, in which Napier-El/Bey stated that he renounced his "United States Nationality" pursuant to 8 U.S.C. § 1481(a)(2). Though this declaration was undated, the Court notes that it accompanied his Memorandum of Law in Opposition to Respondents [sic] Motion to Dismiss, which was dated November 16, 2005 and received by this Court on November 18, 2005, and the declaration bore the appropriate Civil Action Case No. 2:05cv521, which means it could not reasonably have been executed any earlier than September 6, 2005, the date on which the federal habeas petition was conditionally filed in this Court.

   Prior to this, on November 14, 2005, Napier-El/Bey also filed a Motion to Reconsider Appointment of Counsel, raising the same issues as presented in his initial request.  This request is denied at Section II, infra.

**B. Grounds Alleged**

Napier-El/Bey now asserts in this Court that he is entitled to relief under 28 U.S.C. § 2254 for the reasons substantially as follow:

    (a)    Upon arrest and detention, competent authorities failed to acknowledge Petitioner's correct name and nationality (which Napier-El/Bey states is Moroccan) and failed to inform him of his rights to consular assistance pursuant to Article 36, para. 1(b) of the Vienna Convention on Consular Relations of April 24, 1963.[14]

    (b)    Petitioner was denied his human rights and Fourteenth Amendment due process rights recognized by the International Council of Justice ("ICJ") as entitling him to a review and reconsideration of his convictions and sentences for the violation of the Vienna Convention, Article 36, alleged in his first ground.[15]

---

[14]This paragraph states in relevant part:
    1. With a view to facilitating the exercise of consular functions relating to nationals of the sending State . . .
    (b) if he so requests, the competent authorities of the receiving State shall, without delay, inform the consular post of the sending State if, within its consular district, a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. . . . The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph.
Vienna Convention on Consular Relations, art. 36, April 24, 1963, 21 U.S.T. 77 (entered into force with respect to the United States, December 24, 1969) ("Vienna Convention").

[15]Related to these grounds, Napier-El/Bey alleges that the Supreme Court of Virginia erred by dismissing his writ of habeas corpus as not timely filed because the petition was filed within one (1) year of an ICJ decision interpreting Article 36 of the Vienna Convention. This decision was Case Concerning Avena and

Napier-El/Bey's petition for a writ of habeas corpus, filed in the Supreme Court of Virginia on March 28, 2005, asserted essentially the same claims for relief as alleged in the instant petition.[16]   Napier-El/Bey also stated in the memorandum accompanying his federal habeas corpus petition, but it was not raised as a ground in the actual petition, that his trial attorney was ineffective for preventing from him from raising his claim of Moroccan nationality during the trial.[17]   The Supreme Court of Virginia dismissed the petition on April 25, 2005, as not timely filed.

---

Other Mexican Nationals (Mexico v. United States), 2004 I.C.J. 12, decided on March 31, 2004 ("Avena"), discussed infra.

In the memorandum accompanying the instant federal petition, Napier-El/Bey asserts that the Avena decision constituted a new rule of law providing him a new one-year statute of limitations, measured from the date of the Avena decision, in which to file a petition for a writ of habeas corpus alleging a violation of the rule.  In his Memorandum of Law in Opposition to Respondents [sic] Motion to Dismiss, however, Napier-El/Bey contradicted this assertion by arguing that the decision was not actually a "new rule," but instead was an interpretation of a right that existed from the treaty's enactment in 1963.  In any event, as discussed infra, the Court has determined that Napier-El/Bey's reliance on Avena is not sufficient to render his petition timely.

[16]In that petition, Napier-El/Bey did not specify the country from which he was claiming to derive rights as a national.  This omission was referenced in Respondent's Memorandum of Law in Support of Motion to Dismiss, at ¶6.  Because the state habeas petition was dismissed as time barred, this omission does not appear to have influenced that court's decision.

[17]This assertion was not stated anywhere in the state habeas corpus petition.  See also n.24 infra.

## II. PETITIONER'S MOTIONS FOR AN EVIDENTIARY HEARING
## AND FOR APPOINTMENT OF COUNSEL

As a preliminary matter, the Court considers Napier-El/Bey's request for an evidentiary hearing and motion for appointment of counsel.  The Court has determined that an evidentiary hearing is not required, as purely legal issues are presented and the record before the Court adequately resolves the legal issues raised.  See Rule 8 of the Rules Governing Section 2254 Cases.  Moreover, Napier-El/Bey has not alleged any "exceptional circumstances" that would warrant appointment of counsel in this matter.  See Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975); Griffin v. Virginia, 606 F. Supp. 941, 943 (E.D. Va. 1985), aff'd, 780 F.2d 1018 (4th Cir. 1985) (unpublished table decision).  Accordingly, the Court DENIES Napier-El/Bey's motion for an evidentiary hearing and DENIES Napier-El/Bey's motion for appointment of counsel.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court need not address the merits of Napier-El/Bey's habeas corpus petition because the Court FINDS that the petition is barred by the statute of limitations.

### A. Statute of Limitations

#### 1. Application of the AEDPA's One-Year Time Bar

Napier-El/Bey's petition is barred by the statute of limitations.  The statute of limitations for actions under 28 U.S.C. § 2254, effective April 24, 1996, is provided in 28 U.S.C.

10

§ 2244(d)(1):

> A 1-year period of limitation shall apply to
> an application for a writ of habeas corpus by
> a person in custody pursuant to the judgment
> of a State court.  The limitation period shall
> run from . . . the date on which the judgment
> became  final  by  the  conclusion  of  direct
> review  or  the  expiration  of  the  time  for
> seeking such review . . . .

28 U.S.C. § 2244(d)(1)(A).[18]

---

[18]The  Court  has  considered  and  rejects  Napier-El/Bey's
assertion  of  a  new-rule  exception  to  the  statute  of  limitations
based on the Avena decision, supra, and the earlier, but similarly-
decided case of Lagrand Case (Germany v. United States of America),
2001 I.C.J. 466 ("Lagrand").  See also 28 U.S.C. § 2244(d)(1)(C).
In Avena, the ICJ pronounced that the Vienna Convention guaranteed
individuals certain enforceable rights, and that because the United
States had violated those rights, the United States was obligated
to provide "review and reconsideration" to the convictions of those
whose rights were violated to determine if the violations "caused
actual prejudice," without resort to any procedural default rules
as a bar to such review.  Avena, ¶¶ 121-22, 153.  This Court
expresses  its  doubt  as  to  whether  the  type  of  procedural  default
rule,  contemplated  in  Avena,  reaches  the  issue  of  statute  of
limitations as presented in the instant case, see. e.g., Avena, ¶¶
111-12 (defining the "procedural default rule" to involve claims
that "require exhaustion of remedies . . ., at the state level and
before a habeas corpus motion can be filed with federal courts").
The Court also recognizes that this area of the law is in a state
of flux, as indicated by the United States Supreme Court's decision
in Medellin v. Dretke, 544 U.S. 660, 662-63 (2004), in which the
Supreme Court referred to its earlier decision in Breard v. Greene,
523 U.S. 371, 375 (1998) (a per curiam opinion holding that the
Vienna Convention did not create any individually enforceable
rights and upholding application of the procedural bar in a federal
habeas case), and in which the Court expressly declined to opine on
the applicability of Avena to the merits of a federal habeas corpus
petition  that  invoked  individual  rights  under  the  Vienna
Convention.  Until the Supreme Court decides otherwise, therefore,
Breard remains the law, and this Court is not obligated to follow
Avena in any respect.
    Certainly Avena is not to be considered as a new rule of law
for statute of limitations purposes under 28 U.S.C. § 2244, which
states that the limitations period shall run from "the date on

Ordinarily, Napier-El/Bey would have had one year from the date on which his conviction became final to file a petition for federal habeas corpus relief.  His conviction became final on November 14, 1993, which was ninety (90) days after the August 16, 1993, denial of his petition for appeal by the Supreme Court of Virginia and the date upon which the period for seeking direct review of his conviction by the United States Supreme Court expired.  See U.S. Sup. Ct. R. 13(1); Harris v. Hutchinson, 209 F.3d 325, 328 n.1 (4th Cir. 2000).  Because Napier-El/Bey's conviction was finalized prior to the passage of the AEDPA, he was entitled to use the date that the AEDPA was enacted, April 24, 1996, as the start of his statute of limitations for federal habeas

which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2244(d)(1)(C) (emphasis added).  First, the Supreme Court has never established that the federal courts need "give effect" to the ICJ's judgment in Avena, Medellin, 544 U.S. at 662, much less that it provides a new rule of law for statute of limitations purposes.  Second, even assuming that Avena did create individually enforceable rights under the Vienna Convention, such rights do not rise to the level of constitutional rights as required under 28 U.S.C. § 2244(d)(1)(C).  See United States v. Cisneros, 397 F. Supp. 2d 726, 733 (E.D. Va. 2005) (even "assuming without deciding that the [Vienna Convention] creates individual rights, 'it certainly does not create constitutional rights.'") (citing Murphy v. Netherland, 116 F.3d 97, 99-100 (4th Cir. 1997).

The Court also notes Napier-El/Bey's claims that the Avena decision overrides the federal habeas procedural default limitations.  The Court need not reach this argument, however, because the petition can be dismissed on statute of limitations grounds, see infra.  Similarly, the Court declines to address Respondent's assertion that Napier-El/Bey's claims are procedurally barred.

corpus purposes.[19]   Therefore, without considering any tolling provisions, <u>infra</u>, Napier-El/Bey had until April 23, 1997, to file his federal petition for a writ of habeas corpus.  Napier-El/Bey's federal petition was not executed until August 22, 2005,[20] which was more than eight (8) years outside the applicable limitation period.

## 2. Tolling of the Statute of Limitations

A person in state custody, however, may toll the running of the limitation period during the time in which a properly filed application for state post-conviction or other collateral proceedings remains pending.  28 U.S.C. § 2244(d)(2).  Such an application remains pending throughout the state review process, including the time period between a lower state court's decision and the filing of a notice of appeal to a higher state court.

---

[19]The Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996 introduced a one (1) year statute of limitations to 28 U.S.C. § 2244(d)(1).  The Fourth Circuit has held that habeas corpus petitions filed after the enactment of the AEDPA are subject to its provisions.  <u>Breard v. Pruett</u>, 134 F.3d 615, 618 (4th Cir. 1998). The Fourth Circuit also specifically addressed the issue of retroactively applying the AEDPA, and determined that prisoners whose convictions became final prior to the enactment of the AEDPA should have a "reasonable period of time," not exceeding the time allowed by the new statute, in which to file their habeas corpus petitions.  This "reasonable period of time" was determined to be April 23, 1997, one (1) year from the enactment of the AEDPA. <u>Brown v. Angelone</u>, 150 F.3d 370, 375-76 (4th Cir. 1998).

[20]As noted <u>supra</u>, Napier-El/Bey's original federal habeas corpus petition was executed on August 22, 2005.  Though it was not conditionally filed in this Court until September 6, 2005, by application of the mailbox rule, <u>supra</u>, the Court considers the petition to have been filed as of the date of execution for statute of limitations purposes.

Carey v. Saffold, 536 U.S. 214, 220-21 (2002); Rouse v. Lee, 339
F.3d 238, 243-44 (4th Cir. 2003)(a state post-conviction proceeding
for § 2244(d)(2) tolling purposes encompasses all state-court
proceedings "from initial filing [in the trial court] to final
disposition by the highest state court." (quoting Taylor v. Lee,
186 F.3d 557, 561 (4th Cir. 1999))).  This tolling provision does
not, however, apply to federal habeas petitions.  Duncan v. Walker,
533 U.S. 167, 172 (2001).[21]

An application for state post-conviction review is "properly
filed" not merely when it is delivered or accepted by the relevant
court.  Artuz v. Bennett, 531 U.S. 4, 8 (2000).  Rather:

> an application is "properly filed" when its
> delivery and acceptance are in compliance with
> the applicable laws and rules governing
> filings.  These usually prescribe, for
> example, the form of the document, the time
> limits upon its delivery, the court and office
> in which it must be lodged, and the requisite
> filing fee.

Id.  Thus, an application that does not conform to such rules, but
that is nonetheless accepted by the clerk of a state court, is not
a properly filed application; it is merely a "pending" application
that does not toll the limitation period.  Id. at 9 (application

---

[21]The Supreme Court in Duncan v. Walker, 533 U.S. 167, 172
(2001), held that a federal habeas petition is not an "application
for state post-conviction or other collateral review" within the
meaning of § 2244(d)(2) because the word "state" applies to the
entire phrase "post-conviction or other collateral review."  As
such, only state "other collateral review" tolls the limitation
period.  Id.

was not properly filed and limitation period was not tolled where fee was not included with filing).[22]  See also  Pace v. DiGugliemo, 544 U.S. 408, 417 (2005) ("we hold that time limits, no matter their form, are 'filing' conditions.  Because the state court rejected petitioner's . . . petition as untimely, it was not 'properly filed,' and he is not entitled to statutory tolling under § 2244(d)(2)").  On the other hand, an application that complies with such rules governing filings, but that contains claims that are procedurally barred, is still a properly filed application that tolls the statute of limitations.  Bennett, 531 U.S. at 9.

In this case, the record reflects that Napier-El/Bey's second petition for state habeas relief to the Virginia Supreme Court was not "properly filed" because it was not timely filed as required by Va. Code § 8.01-654(A)(2).  No tolling of the federal statute of limitations was available for the time that Napier-El/Bey's second state habeas petition was pending.[23]  "When a postconviction

_____

[22]See also Osborn v. Dotson, 2002 WL 32443533 at * 2 (E.D. Va.) (application was not properly filed because it was submitted on improper forms, was not sworn under penalty of perjury, and did not contain a description of facts and procedural history for each claim); Christian v. Baskerville, 232 F. Supp. 2d 605, 607 (E.D. Va. 2001) (petition for appeal was not properly filed because it did not contain a list of errors as required by Va. Sup. Ct. R. 5:17(c)).

[23]The Court notes that even if Napier-El/Bey were entitled to a tolling period during the pendency of his state petition for writ of habeas corpus in the Supreme Court of Virginia, the tolling would not have been sufficient to render Napier-El/Bey's federal petition timely.  There were twenty-eight (28) days between March 28, 2005, the date upon which Napier-El/Bey filed his second state

petition is untimely under state law, 'that [is] the end of the matter' for purposes of 2244(d)(2)." Pace, 544 U.S. at 414 (citing Carey v. Saffold, 536 U.S. 214, 226 (2002)). Thus, the federal statute of limitations was never tolled after April 23, 1996, supra, the date the AEDPA was passed, and which commenced Napier-

---

habeas petition, and April 25, 2005, the date the Virginia Supreme Court dismissed the appeal as not timely filed. Even if the state habeas petition had been properly filed, the associated tolling would have had no effect on Napier-El/Bey's ability to file his federal habeas petition. The AEDPA's one-year statute of limitations for Napier-El/Bey to file his federal habeas petition expired on April 23, 1997, well before the filing of his state petition.

Even assuming, moreover, that Napier-El/Bey had satisfied the new-rule requirement, discussed supra, using the date of the Avena decision as the start of the new rule's statute of limitation, his federal petition would still not be timely. Avena was decided on March 31, 2004. This would have given Napier-El/Bey until March 31, 2005, to file his federal habeas corpus petition under 28 U.S.C. § 2244(d)(1)(C). The Court has determined, supra, that the instant federal petition was entitled to a filing date as of the date of execution, August 22, 2005. This date was still over four (4) months after the expiration of that statute of limitations. If Napier-El/Bey's state habeas corpus petition had somehow been deemed timely filed, this also would not have sufficiently tolled the statute of limitations to render the federal petition timely. The second state habeas petition was filed on March 28, 2005, three (3) days before the end of the new-rule statute of limitations based on the Avena decision. The state habeas petition was denied on April 25, 2005. Thus, considering that only three (3) days would have remained on the new-rule statute of limitations, Napier-El/Bey would have had until April 28, 2005, to timely file his federal habeas petition. Even with tolling and the benefit of the Avena date of decision, therefore, his petition would still have been more than three (3) months after the expiration of the statute of limitations.

The Court further notes that Napier-El/Bey's first state habeas petition also does not qualify for tolling. That petition was granted on March 2, 1992. Because Napier-El/Bey's conviction for the instant criminal acts did not become final until November 14, 1993, only petitions filed after that date would be eligible for tolling.

El/Bey's one-year statute of limitations in which to file his federal habeas corpus petition.  The deadline for Napier-El/Bey to file his federal petition for habeas corpus remained April 23, 1997, and he was over eight (8) years after and outside the limitation period when his petition was executed on August 22, 2005.

### 3. Equitable Tolling

The Court construes Napier-El/Bey to argue that his failure to timely file his federal petition for a writ of habeas corpus should be excused because the statute of limitations should be equitably tolled.  Equitable tolling of the limitation period, however, is appropriate only when a petitioner "presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).  "[A]ny resort to equity must be reserved for those rare instances where – due to circumstances external to the party's own conduct – it would be unconscionable to enforce the limitation period against the party and gross injustices would result." Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000); Little v. United States, 184 F. Supp. 2d 489, 494 (E.D. Va. 2002).

Other than relying on the ICJ's decisions in Avena and Lagrand, supra, to challenge his conviction, Napier-El/Bey raises no circumstances whatsoever that rise to the level necessary to

17

equitably toll the statute of limitations.  The record reflects no circumstances, much less any extraordinary circumstances, that were beyond Napier-El/Bey's control or external to his control to excuse his late filing of his habeas petition.  As discussed <u>supra</u>, the <u>Avena</u> decision does not constitute a "new rule" to support equitable tolling.

Accordingly, the Court FINDS that the instant petition is time-barred and recommends that it should be DENIED.[24]

---

[24]The Court also notes that Napier-El/Bey's claims are without merit.

Napier-El/Bey's first ground includes an assertion that he was called by the wrong name upon arrest and detention.  Because his name has no relation to the elements of the crimes with which he was charged, there is no related constitutional issue that can be raised for habeas corpus review.  The Court notes that during the sentencing hearing on June 12, 1989 (transcript p. 6), Petitioner's own father, Charles E. Napier Sr., testified that Petitioner's name was Charles E. Napier, Jr.  Also, Napier-El/Bey has provided no documentation to dispute that Charles E. Napier, Jr., was his name given at birth.  The only evidence provided in support of his use of the suffixes "El" and "Bey" is a 1933 Pennsylvania House of Representatives Resolution authorizing Moroccans in general to use suffixes, such as "El" or "Bey" "to which they have heretofore been accustomed to use."  <u>See</u> Napier-El/Bey's federal habeas corpus petition, Exhibit A.  Napier-El/Bey has provided no documentation that his family had been accustomed to use these suffixes, and in particular, his father's testimony after the date of this resolution demonstrates otherwise.  Further, the authority to which he refers is a Pennsylvania resolution that appears inapplicable to Napier-El/Bey whom the record shows was born and raised in Illinois until his enlistment in the United States Marine Corps.  The Court notes that the prisoner has used several variations of his name (including Napier, Napier-El, Napier-El-Bey, and Napier-El/Bey) in his filings with the various state and federal courts, but regardless of the name the prisoner has chosen to use in these court filings, the respective courts have referred to the prisoner by the name he provided.

Also included in the first ground is an assertion that competent authorities failed to acknowledge Napier-El/Bey's correct

nationality, asserted by him as Moroccan. Napier-El/Bey has
provided no documentation in support of this statement. The court
record shows and Napier-El/Bey admits in his Memorandum of Law in
Opposition to Respondents [sic] Motion to Dismiss ¶¶ 12-14 that he
was born in Chicago, Illinois, even as he denies having U.S.
Citizenship. Napier-El/Bey's birth within the United States makes
him a U.S. citizen. U.S. Const. Amend. 14; 8 U.S.C.S. § 1401(a)
(2006). Napier-El/Bey has provided no evidence to dispute this
status as of the time of his trial. Additionally, the trial
sentencing report showed additional documentation to support a
finding of U.S. citizenship: Napier-El/Bey's parents have U.S.
citizenship; Napier-El/Bey has a Social Security number; and
Napier-El/Bey served almost four (4) years in the U.S. Marine
Corps. At best, Napier-El/Bey has (or had at the time of trial)
dual-citizenship for both the United States and Morocco. In Avena,
the ICJ did not reach the issue asserted by the United States, that
the Vienna Convention does not apply to individuals with dual-
citizenship who are tried in one of their home countries. See
Avena ¶57. The ICJ did find that a statement in an arrest record
regarding birth in the United States was insufficient to show U.S.
citizenship. Avena ¶69. This issue of proof of citizenship was
clarified in one of the case's separate opinions. Judge Parra-
Aranguren stated that birth certificates provided by Mexican
authorities were not considered to be sufficient proof of
citizenship because Mexico had not provided the ICJ with the text
of its constitution, establishing citizenship by birth. Avena,
Separate Opinion of Judge Parra-Aranguren ¶11. It appears similar
reasoning was applied to the United States' assertions of dual
citizenship. This Court does have access to the relevant law and
can find that Napier-El/Bey definitively meets the qualifications
for United States citizenship by birth. See U.S. Const. Amend. 14;
8 U.S.C.S. § 1401(a) (2006). Additionally, Napier-El/Bey included
a Declaration of Nationality with his Memorandum of Law in
Opposition to Respondents [sic] Motion to Dismiss confirming that
he was a U.S. citizen by birth ("jus soli") and implying that it
was only with that declaration that he ceased to be a United States
citizen. Judge Parra-Aranguren's opinion also addressed the issue
of dual-citizenship, citing Draft Articles on Diplomatic Protection
Article 6, which seem to suggest that Napier-El/Bey could only
assert rights under the Vienna Convention if his Moroccan
nationality was his "predominant nationality." See Avena, Separate
Opinion of Judge Parra-Aranguren ¶13. Because Napier-El/Bey has
provided no proof of Moroccan citizenship, other than the
Declaration of Nationality, in which he states he is Moroccan by
blood ("jus sanguinis"), there is insufficient evidence to find
that Napier-El/Bey is a Moroccan National, much less that this

predominated over his U.S. citizenship at the time of trial.  Even
if Napier-El/Bey's Declaration of Nationality now entitles him to
the rights in the Vienna Convention, this Court has determined the
declaration could have been executed no earlier than September 6,
2005, see supra n.13, the date on which his petition was
conditionally filed in this Court.  This means the declaration was
made well after his conviction was finalized, and does not change
his United States citizenship at the time of trial.  Because
Napier-El/Bey was a United States citizen when he was tried,
Article 36(b) of the Vienna Convention did not apply, and
consequently, Napier-El/Bey was entitled to no rights under the
Vienna Convention for United States authorities to violate.

     In his second ground, Napier-El/Bey asserted violations of
human rights and due process.  It appears the human rights claim is
in reference to claims made by Mexico and Germany in Avena and
Lagrand, respectively, regarding the Vienna Convention's consular
notification requirement constituting a human right.  Avena,
¶12(5); Lagrand ¶78. In both cases, the ICJ stated that the human
rights issue was "not a matter that th[e] Court need decide."
Avena ¶124; Lagrand ¶78.  Napier-El/Bey has provided no other
grounds for his human rights claim.  The ICJ also addressed the
issue of due process and held that the Vienna Convention
constituted treaty rights that are distinct from United States
constitutional rights, such as due process.  Avena ¶139.  The
United States Supreme Court agreed that Avena identified a treaty
violation that still required a "substantial showing of a denial of
a constitutional right" to qualify for habeas relief.  Medellin,
125 S. Ct. at 989.  By relying solely on Avena for this ground,
Napier-El/Bey has failed to make such a showing.

     Napier-El/Bey also raised in the memorandum accompanying his
federal habeas petition, an assertion of ineffective assistance of
counsel regarding the counsel's refusal to assert Napier-El/Bey's
claim of Moroccan citizenship.  Under the two-prong test of
Strickland v. Washington, 466 U.S. 668 (1984), the petitioner must
prove both ineffective assistance (incompetence) and prejudice as
a result thereof.  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986).
To grant relief, therefore, the state court had to find: (1)
Napier-El/Bey's lawyer's performance fell below the range of
competence demanded of lawyers in criminal cases, Strickland, 466
U.S. at 690; and (2) there is a reasonable probability that, but
for the deficient performance by counsel, the ultimate result would
have been different, id. at 694.  Also, a reviewing court need not
consider the two prongs of the Strickland analysis in sequential
order.  Strickland, 466 U.S. at 697.  The court need not even
address both prongs if the petitioner fails to make a sufficient
showing on one.  Id.  When evaluating an ineffective assistance of

### IV.  <u>RECOMMENDATION</u>

For the foregoing reasons, the Court, having denied Napier-El/Bey's request for an evidentiary hearing and motion for appointment of counsel, recommends that Napier-El/Bey's petition for a writ of habeas corpus be DENIED, that Respondent's motion to dismiss be GRANTED, and that all of Napier-El/Bey's claims be DISMISSED WITH PREJUDICE.

Napier-El/Bey has failed to demonstrate "a substantial showing of the denial of a constitutional right."  Therefore, it is recommended that the Court decline to issue any certificate of appealability pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure.  See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003).

### V.  <u>REVIEW PROCEDURE</u>

By copy of this Report and Recommendation, the parties are notified that:

1.  Any party may serve upon the other party and file with the Clerk specific written objections to the foregoing findings and recommendations within ten (10) days from the date of mailing of

---

counsel claim, a court should first apply whichever prong more quickly disposes of the respective claim.  <u>See id.</u>

In this case, Napier-El/Bey's claim of ineffective assistance of counsel has no merit.  Napier-El/Bey has provided no evidence of how he was prejudiced at trial by not having had an opportunity to contact the Moroccan consulate.  Counsel is not ineffective simply because the client is unhappy with the results at trial. See <u>Wright v. Angelone</u>, 151 F.3d 151, 161 (4th Cir. 1998).

this report to the objecting party, <u>see</u> 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, plus three (3) days permitted by Rule 6(e) of said rules.  A party may respond to another party's specific objections within ten (10) days after being served with a copy thereof.  <u>See</u> Fed. R. Civ. P. 72(b).

2.  A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
F. Bradford Stillman
United States Magistrate Judge

Norfolk, Virginia

June 1, 2006

<u>Clerk's Mailing Certificate</u>

A copy of the foregoing Report and Recommendation was mailed

this date to the following:

Charles Napier-El/Bey, #167446
Nottoway Correctional Center
P.O. Box 488
Burkeville, Virginia 23922
PRO SE

Thomas D. Bagwell, Esq.
Assistant Attorney General
Office of the Attorney General
900 E. Main Street
Richmond, Virginia 23219


                                   Fernando Galindo,
                                   Acting Clerk of Court



                    By:   _____
                          Deputy Clerk

                          June    , 2006

23